**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Regald B. SMITH, Defendant,**

**Phillip S. Stenger,
Receiver/Appellee/Cross–Appellant,**

**Neal Smith, d/b/a Smith Law Offices; Stifel Nicholas & Co., Inc.; Robert Scott Smith; Mary Ann Smith, Movants,**

**U.G. Haynes; Barbara Haynes, Movants/Appellants/Cross–Appellees.**

**Nos. 02–6065, 02–6175.**

United States Court of Appeals,
Sixth Circuit.

April 12, 2004.

Douglas W. Van Essen, Steven T. Buquicchio, Stenger & Stenger, Grand Rapids, MI, Regena Triplett, Pikeville, KY, for Defendant–Appellee Cross–Appellant.

Phillip S. Stenger, Grand Rapids, MI, pro se.

H. Michael Lucas, Miller, Kent, Carter & Michael Lucas, Pikeville, KY, for Movants–Appellants Cross–Appellees.

Before KENNEDY, DAUGHTREY, and COLE, Circuit Judges.

KENNEDY, Circuit Judge.

This present action arises from an enforcement action that the Securities and Exchange Commission ("SEC") filed on September 6, 2000, against Regald B. Smith ("Smith"), who misappropriated approximately $5,000,000 from his brokerage firm's clients while acting as a stockbroker.[1] On September 7, 2000, the district court entered a permanent injunction pro-

---

1. On October 10, 2000, Smith pleaded guilty to criminal charges arising from this fraudu- lent conduct; Judge Hood sentenced Smith to twenty-four months of imprisonment.

hibiting Smith from disposing of any of his assets and ordering Smith to disgorge all ill-gotten gains from his securities fraud. On October 18, 2000, the district court appointed Phillip S. Stenger ("The Receiver") as the Receiver over Smith's assets so as to marshal them for the benefit of the defrauded investors. On March 15, 2001, the Receiver filed a motion to rescind a Real Property Purchase Agreement that Smith had entered into with U.G. and Barbara Haynes ("the Hayneses") on August 14, 2000, when Smith had been under investigation by the SEC and the FBI and had been suspended from trading as a licensed broker by his firm. Under the terms of the Real Property Purchase Agreement, Smith agreed to purchase the "Cowpen" property, which comprises the Hayneses' home and various rental properties located in Pike County, Kentucky, for a purchase price of $680,000. In particular, Smith agreed to pay the Hayneses $200,000 immediately, $100,000 on August 1st of years 2001 through 2003, and a payment of the balance of the $680,000 purchase price on August 1, 2004. Smith also agreed to permit the Hayneses to remain in their home rent-free for a period of four months following the date of the agreement. In exchange, the Hayneses agreed to give Smith a deed to the property and immediate possession of the property, including any rent owed for that property. The Hayneses acquired a vendor's lien on the property to insure Smith's payment of the remaining balance. Smith took possession of the deed and the ven-

dor's lien, both of which were never recorded.

In a memorandum opinion and order dated April 2, 2002, the district court granted the Receiver's rescission motion on the ground that the Real Property Purchase Agreement was a preferential conveyance in violation of Kentucky Revised Statute § 378.060.[2] The district court ordered the rescission of the Real Property Purchase Agreement as well as the invalidation of both the deed and the vendor's lien. In that memorandum, the district court, without expressly ordering so, held that the Hayneses must repay the Receiver the $200,000 down payment minus offsets for a donation that the Hayneses made to their church in reliance upon the sale, the insurance premiums that they paid to insure the property, and their expenses in beginning construction on a new home. The district court did not specify the exact amounts of these offsets. On April 15, 2002, the district court entered a final judgment: 1) ordering the title to the Cowpen Property to remain in the Haynes name, the rescission of the Real Property Purchase Agreement, and the invalidation of both the deed and the vendor's lien, per its April 2, 2002, order; and 2) ordering the Hayneses to pay the Receiver $183,025.28, an amount based upon the $200,000 down payment minus $10,000 for the church donation, $904.80 for the paid insurance premium, and $6,069.92 for construction expenses.

On April 25, 2002, the Hayneses filed a motion, under Federal Rule of Civil Procedure 59(e), for reconsideration of the Re-

---

**2.** Section 378.060 provides, in part:

Any sale, mortgage or assignment made by a debtor and any judgment suffered by a defendant, or any act or device done or resorted to by a debtor, in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion, in whole or in part, or others, shall operate as

an assignment and transfer of all the property of the debtor, and shall inure to the benefit of all his creditors, except as provided in subsection (2) of KRS 378.090, in proportion to the amount of their respective demands including those which are future and contingent.

ceiver's motion for rescission.[3] For the first time, the Hayneses argued that the Receiver did not specifically plead the applicability of KRS § 378.060 in its motion for rescission and, alternatively, that the Receiver's filing of that motion was untimely under the applicable statute of limitations. For the first time, the Hayneses also requested additional offsets for their loss in rent resulting from the Receiver's failure to collect such rent and for the cost of repairs to the Cowpen property "due to the Receiver's failure to take physical control of ... [such] property upon his appointment."

On July 25, 2002, the district court issued an order partly denying and partly granting the Hayneses' reconsideration motions. The district court declined to consider the Hayneses' arguments as to the particularity of the pleadings and the statute of limitations on the ground that they had failed to raise them in a timely manner. Yet, the court permitted the offsets for the rent that the Receiver failed to collect and the costs to repair the Cowpen property due to the Receiver's failure to take physical control of it. Without specifying the particular amounts of these additional offsets, the district court ordered the amendment of its April 15, 2002, disgorgement order to include them.

The Hayneses appeal: 1) the district court's April 2, 2002, order rescinding the Real Property Purchase Agreement; 2) its April 15, 2002, judgment ordering the Hayneses to disgorge a portion of the $200,000 downpayment; 3) and its July 25, 2002, order denying their reconsideration motion's claims that the application of KRS § 378.060 was time-barred and that the Receiver had failed to plead this legal theory properly. The Hayneses also appeal the district judge's participation in the

action on the ground that he should have *sua sponte* recused himself under 28 U.S.C. § 455(a). The Receiver, in turn, cross-appeals the district court's July 25, 2002, order partly granting the Hayneses' reconsideration motion by permitting the offsets for lost rent and property repairs.

We must first assure ourselves of our jurisdiction over these appeals, even if the litigants have not raised the issue. *United States v. Jolivette*, 257 F.3d 581, 583 (6th Cir.2001). 28 U.S.C. § 1291 provides, in part, that we have jurisdiction over "appeals from all final decisions of the district courts of the United States." Generally, a judgment is not a "final decision" for purposes of § 1291 "when the assessment of damages remains." *Woosley v. Avco Corp.*, 944 F.2d 313, 316 (6th Cir.1991) (citing *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976), which held that a grant of partial summary judgment on the limited issue of liability was not final under § 1291 "where assessment of damages or awarding of other relief remains to be resolved"). However, a judgment may be "final if only ministerial [and uncontroversial] tasks in determining damages remain." *Id.* at 316–17 (holding that an order granting recovery for the defendant employer's failure to reinstate the plaintiffs to their former positions but ordering the parties to stipulate to the requisite amount of backpay was a final decision within § 1291 because the stipulation concerning damages was "ministerial and uncontroversial"); *see Durkin v. Mason & Dixon Lines*, 202 F.2d 425, 425 (6th Cir. 1953) (holding that an order granting recovery for the defendant's failure to pay overtime wages but providing that the particular amount of that recovery was subsequently to be determined based upon the

---

**3.** The Hayneses had previously filed this motion on April 12, 2002, before the district

court rendered its April 15, 2002, final judgment.

parties' previously-filed stipulation was a "final order" under § 1291 because it, nevertheless, "settled all the equities between the parties and finally determined their rights").

Here, however, the assessment of the amounts of the offsets for property repairs and lost rent is neither ministerial nor uncontroversial. Thus, the district court's amended April 15, 2002, order permitting offsets for property repairs and lost rent is not a final decision with the meaning of § 1291. Additionally, neither Federal Rule of Civil 54(b) applies so as to render this decision final for purposes of § 1291, *see Liberty Mutual Ins. Co.*, 424 U.S. at 743, nor 28 U.S.C. § 1292 applies to afford us jurisdiction in limited cases of interlocutory decisions. Therefore, we lack jurisdiction to hear the Hayneses' appeals or the Receiver's cross-appeal. We also lack jurisdiction to entertain the Hayneses' companion claim that the district judge should have recused himself under 28 U.S.C. § 455(a). *See Collier v. Picard*, 237 F.2d 234, 234 (6th Cir.1956) (holding that jurisdiction exists to review an appeal from an order rejecting disqualification under § 455(a) only upon the proper appeal of an interlocutory order or a final decision in the proceeding in which the disqualification motion was filed).

For the preceding reasons, we DISMISS the present appeals for a lack of appellate jurisdiction.